**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DUSTIN REININGER, | Civil Action No. 14-5486-BRM |
| Petitioner, | |
| v. | **OPINION** |
| ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | |
| Respondents. | |

**MARTINOTTI, DISTRICT JUDGE:**

Before this Court is the petition for a Writ of Habeas Corpus of Petitioner Dustin Reininger ("Petitioner"), brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons set forth below, Petitioner's habeas petition is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.

**I.     BACKGROUND**

**A.  State Court proceedings**

A Hunterdon County grand jury charged defendant Dustin Reininger with second-degree unlawful possession of assault firearms, N.J. Stat. Ann. § 2C:39–5(f) (count one); second-degree possession of handguns without a permit, N.J. Stat. Ann. § 2C:39–5(b) (count two); third-degree unlawful possession of rifles, N.J. Stat. Ann. § 2C:39–5(c) (count three); third-degree unlawful possession of shotguns, N.J. Stat. Ann. § 2C:39–5(c) (count four); fourth-degree possession of hollow-nose bullets, N.J. Stat. Ann. § 2C:39–3(f) (count five); fourth-degree possession of a large capacity ammunition magazine, N.J. Stat. Ann. § 2C:39–3(j) (count six); third-degree hindering his own apprehension, N.J. Stat. Ann. § 2C:29–3(b) (count seven); and fourth-degree obstruction of the administration of law, N.J. Stat. Ann. § 2C:29–1 (count eight). Count eight was dismissed

by the court prior to trial. Defendant was tried in absentia. *See State v. Reininger*, 430 N.J. Super. 517, 525 (App. Div. 2013).

In a published opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey, Appellate Division provided the following summary of the facts underlying this matter:[1]

> At approximately 3:25 a.m. on March 20, 2009, Patrolman Gregory Wester of the Readington Township Police Department was on routine patrol when he observed a Toyota sport utility vehicle (SUV) with its lights off, parked behind a Wachovia Bank. As Wester pulled into the bank's parking lot to investigate, he turned on his overhead lights, which activated a mobile video recorder on his dashboard. After notifying the police dispatcher of his location, Wester approached the vehicle with a flashlight.
>
> Wester noticed that the vehicle had Texas license plates and that an individual, later identified as defendant, was sleeping in the driver's seat under a blanket. Wester testified that when he woke defendant, he appeared "nervous and tired." According to Wester, defendant "had trouble maintaining eye contact" and when asked "a basic question he would think about it and stutter."
>
> Defendant provided Wester with a Texas driver's license but could not produce the vehicle registration or proof of insurance. When Wester inquired about a Texas license plate on the floor near the center console that was different from the plates on the SUV, defendant said the plates on the vehicle had expired, and he had difficulty installing the current plates which were in the vehicle. Defendant also said he had been a police officer in Maine and had stopped to rest while traveling from Maine to Texas, but defendant was unable to produce any law enforcement identification.
>
> Wester noticed several items "stacked" on the backseat of the SUV, and he asked if there was anything illegal in the vehicle. Defendant answered, "No." Wester also asked defendant if he was transporting any firearms, and defendant responded, "No, no, all good." At that point, Wester used his flashlight to illuminate the rear

---

[1] *See Reininger*, 430 N.J. Super. at 525-31. The Appellate Division derived the relevant facts from the video recording (which was shown to the jury), Wester's affidavit in support of a search warrant, grand jury testimony, pretrial motion hearings, and trial testimony. *Id.* at 526 n.1.

passenger compartment, and he saw two nylon firearm cases on the backseat of defendant's vehicle. Wester again asked if there were any firearms in the SUV, and defendant again answered, "No." Wester testified, "Once I saw the firearms I didn't say anything about it. I didn't want to alert him. I immediately radioed for backup."

When a backup officer arrived, Wester confronted defendant about the cases on the backseat of the vehicle. Wester said he saw "a case in there that looks very, very similar to what I have in my house for my long arm, so I'm going to ask you again [are] there any firearms in the car." This time, defendant admitted he had "long arms that [he was] moving to Texas," which were registered in Texas. Defendant was ordered out of the vehicle and patted down for weapons, but none were found.

After two more officers arrived, Wester asked for consent to search the vehicle. Defendant denied consent. Wester asked how many firearms were in the vehicle, and defendant answered, "Three shotguns [and] an AR–15." Wester also asked if there were any handguns in the SUV. Defendant said he was "not sure," even though he acknowledged he had packed the vehicle.

Wester then opened the back door of defendant's SUV and removed the two nylon cases. Wester testified he did so "for safety reasons" and to make sure the firearms were being "transported in a safe manner." As Wester was examining the cases, defendant told another officer there were "approximately twelve firearms" in the vehicle, including "a loaded Glock handgun" behind the driver's seat. Once defendant admitted there was a loaded handgun in his vehicle, he was charged with hindering his own apprehension, advised of his *Miranda* rights, and handcuffed. Wester then returned the firearm cases to the vehicle, and it was towed to the Readington Township Police Department. Later that same morning, Wester applied for and obtained a search warrant.

A search of defendant's vehicle revealed twenty-one firearms, including rifles, shotguns, and handguns. In addition, the police recovered hollow-nose bullets from the Glock handgun and a large capacity magazine.

When Wester testified before the grand jury, he provided a summary of the firearms and other items recovered from defendant's vehicle. He also stated that defendant's SUV did not have a trunk, but rather a "rear compartment," and that defendant did not have a New Jersey permit to purchase or carry firearms or a New Jersey firearms purchaser ID card.

Wester explained that several of the rifles and shotguns were located on the backseat of defendant's vehicle and were stored in

3

either nylon or cloth cases that closed with zippers or Velcro flaps, and none of the firearms were in locked containers. One of the grand jurors asked whether defendant would have been charged if the firearms were "locked in a box and separated." The prosecutor responded:

> No. There are actually some exceptions to the requirements. . . . Basically, if someone is moving . . . from Residence A [to] Residence B, or transporting, say, for example, they just purchased it, so they can transport it to their home, if they are properly secured, locked in a trunk, locked in a special lockbox and unloaded, then that would most likely provide an exception to these requirements, and therefore a defense to being charged.

> So, that is a factor to consider how the weapons were contained and, again, whether they were loaded, whether they were in a lockbox.

The prosecutor also read the exemption for transporting firearms under [N.J. Stat. Ann.] § 2C:39–6(g), which requires a firearm to "be carried unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which it is being transported."

Defendant filed three pretrial motions: a motion to dismiss the indictment, a motion to suppress evidence obtained with and without a search warrant, and a motion to suppress his statements to the police. Wester was the only witness to testify at the suppression hearing. Except for dismissing count eight of the indictment, which charged defendant with obstructing the administration of law, the court denied the motions on March 8, 2010.

During a pretrial conference on April 16, 2010, the court informed defendant of his right to be present at trial and that the trial was scheduled for August 9, 2010. The court also informed defendant that if he failed to appear, the trial could proceed in his absence. Defendant stated that he understood. Nevertheless, Defendant failed to appear for his trial, which began on August 9, 2010, and his attorney could not explain his absence.

The State presented testimony from Detective Donald Mundorff, a member of the New Jersey State Police Firearms Investigation Unit. He testified Defendant had not applied for a New Jersey firearms ID card, pistol purchase permit, carrying permit, or a permit for an assault weapon. Mundorff conceded on cross-examination, however, that a Maine resident who purchased firearms in Maine would not be required to obtain New Jersey permits or firearms purchaser's ID cards to transport the firearms through New Jersey, so long as the firearms were transported in

accordance with 18 U.S.C.A § 926A, which regulates the interstate transportation of firearms. . . .

In addition, the State called Wester and Detective Sergeant Ryan Neiber to document the location of the firearms and additional items recovered from defendant's SUV through digital photography. Wester testified the SUV did not have a trunk, and some rifles and shotguns were in unlocked nylon or vinyl cases on the backseat of defendant's vehicle. According to Wester, the rest of the rifles and shotguns were in "gun socks." Wester testified the gun socks had "an opening on one end with Velcro. Just open the Velcro and you can slide the gun out of the gun sock." Wester also testified that the Glock handgun, recovered from behind the driver's seat, was loaded with hollow-nose bullets.

The State's final witness, Detective Gary Mayer, a ballistics expert with the Somerset County Prosecutor's Office, was responsible for determining whether the firearms were operable. Except for one shotgun that was broken, Mayer examined and test-fired each of the firearms and found them to be operational. Mayer also testified that an ammunition magazine recovered from the vehicle, which held approximately thirty bullets, was compatible with two of the semi-automatic weapons he tested.

Defendant did not present any witnesses. Defense counsel emphasized in his opening and closing statements that defendant was in the process of traveling from his "old residence in Maine" to his "new residence in Texas," and that it was lawful for defendant to transport his firearms from "one residence [to] another residence while moving." Defendant's attorney also argued that some of the firearms cases had zippers that were "closed and fastened" and the cases that did not have zippers were not "any less worthy." Therefore, defendant "was within the exemptions of the federal law." In response, the State stressed that the Glock handgun was loaded, none of the firearms were in locked containers, and the firearms on the backseat of defendant's vehicle were readily accessible from the driver's seat.

The court instructed the jury to consider both state and federal laws regulating the transportation of firearms. The jury was instructed that defendant had a defense under New Jersey law, N.J.S.A. 2C:39–6(g), if: (1) he was "carrying or transporting" the firearms "from one residence to another or between his residence and place of business"; (2) "the firearms being transported were carried unloaded"; and (3) "the firearms were contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk" of defendant's vehicle. The jury was told to "consider the evidence as it pertained to each firearm" in determining whether the defense applied.

The jury was further instructed that defendant had a defense under federal law if he was transporting the firearms, including any assault firearms, "from one residence where he may lawfully possess and carry" the firearms "to any other place where he may lawfully possess and carry" the firearms; the firearms "being transported were carried unloaded"; and neither the firearms nor any ammunition were "readily accessible" or "directly accessible" from the passenger compartment of the vehicle.

*Reininger*, 430 N.J. Super. at 525-31.

On August 13, 2010, the jury acquitted Petitioner of unlawful possession of assault firearms and handguns without a permit (counts one and two) but convicted him of the remaining charges. *See id.* at 524. On November 18, 2011, the court sentenced Petitioner as follows: on counts three and four, to five years imprisonment with a mandatory minimum three-year period of incarceration pursuant to the Graves Act, N.J. Stat. Ann. § 2C:43–6(c); on counts five and six, to eighteen months imprisonment; and on count seven, to three years imprisonment. *Id.* The court ordered the sentences to run concurrently. *Id.* Therefore, Petitioner was sentenced to an aggregate five-year term of imprisonment with a three-year period of parole ineligibility. *Id.* at 524-25.

Petitioner appealed, and on May 20, 2013, the Appellate Division affirmed his conviction and sentence in a published opinion. *See id.* at 539. Petitioner sought certification, and his petition was denied on December 6, 2013. *State v. Reininger*, 216 N.J. 367 (2013).

**B. Habeas Proceedings**

Petitioner's habeas petition was docketed on August 26, 2014, in the Southern District of Texas, where Petitioner resides.[2] (*See* ECF No. 1.) Because Petitioner challenged firearms and related convictions entered in the Superior Court of New Jersey, the District Court for the Southern

---

[2] Petitioner was still on parole supervision in New Jersey at the time he filed his Petition and was subject to supervision by the Texas parole authorities. (*See* ECF No. 8, Order of the Honorable Nelva Gonzales Ramos, dated August 29, 2014 at pages 1-2.) Thus, he meets the custody requirement for habeas petitions. *See Jones v. Cunningham*, 371 U.S. 236, 242 (1963).

District of Texas transferred the matter to this District. (*See* ECF Nos. 8-9.) The Petition raises twelve grounds for relief. (*See* ECF No. 1, Pet. at 3-15.)

On September 18, 2014, Petitioner submitted what he characterized as an "Amendment" to his Petition that did not raise any additional grounds for relief. (ECF No. 12.) On September 26, 2014, the Court advised Petitioner of his rights pursuant to *Mason v. Meyers*, 203 F.3d 414 (3d Cir. 2000), and Petitioner elected to have his Petition ruled on as filed. (ECF Nos. 14, 17.) The Court ordered Respondent to file an Answer to the Petition. (ECF No. 18.) On December 12, 2014, Respondent filed its Answer, arguing in part that certain claims were unexhausted and that the petition should be dismissed as a mixed petition. (ECF Nos. 20, 22.) Petitioner sought and received several extensions of time within which to file his traverse and filed his traverse on July 1, 2015. (ECF Nos. 26, 28.)

On October 7, 2015, Judge Sheridan recused himself and the matter was assigned to the Honorable Freda L. Wolfson. (ECF No. 31.) On August 8, 2016, the matter was reassigned to the undersigned. (ECF No. 32.)

On August 9, 2017, the Court determined some of Petitioner's claims were unexhausted and issued an Order directing Petitioner to show cause as to why his Petition should not be dismissed as a mixed petition. (ECF No. 33.) The Court provided Petitioner with thirty days to either withdraw his unexhausted claims and have the Court rule on his remaining claims or request a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). On September 6, 2017, Evan Feit Nappen, Esquire, entered an appearance on behalf of Petitioner, and informed the Court that Petitioner elected to withdraw his unexhausted claims and proceed on his exhausted claims. (*See* ECF Nos. 34, 35.)

7

**II.    LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Price v. Vincent*, 538 U.S. 634, 641 (2003); *Harrington v. Richter*, 562 U.S. 86, 98 (2011). District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## III. DECISION

### A. Unexhausted Claims

The Court first addresses the unexhausted claims. To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The burden is on the habeas petitioner to prove exhaustion." *DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005). The exhaustion doctrine mandates that the claim "must have been 'fairly presented' to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "Fair presentation means that a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citations omitted). In sum, the exhaustion doctrine

requires the petitioner to afford the state courts "the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief." *Id.* (quoting *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir.1976)); *see also Gould v. Ricci*, No. 10-1399, 2011 WL 6756920, at *2 (D.N.J. Dec. 19, 2011) (explaining same). The exhaustion doctrine thus requires a petitioner challenging a New Jersey conviction under § 2254 to have fairly presented each federal ground that is raised in the petition <u>to all three levels of the New Jersey courts</u>, that is, the Law Division, the Appellate Division, and the New Jersey Supreme Court. *See O'Sullivan*, 526 U.S. at 838; *Rose v. Lundy*, 455 U.S. 509 (1982).

In its Answer, Respondent argued the Petition must be dismissed as a mixed petition because Grounds Four, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve are unexhausted, as Petitioner failed to raise these issues to the New Jersey Supreme Court in his Petition for Certification. (*See* Petition for Certification to the New Jersey Supreme Court (ECF No. 22-7).) Indeed, Grounds Four, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve appear unexhausted because Petitioner did not raise them as grounds for relief in his Petition for Certification.[3] Instead, Petitioner raised the following three errors:

**POINT I**
**EITHER A CITIZEN IS REQUIRED TO SURRENDER HIS FOURTH AMENDMENT RIGHTS WHEN EXERCISING HIS SECOND AMENDMENT RIGHT, OR THE**

---

[3] Ground Four raises a *Miranda* claim; Ground Six challenges the warrants obtained to search his vehicle; Ground Seven challenges characterizations by the Appellate Division, including a statement that Petitioner had a "loaded firearm;" Ground Eight challenges statements made by the Prosecutor to the grand jury and at trial; Ground Nine alleges Petitioner's Equal Protection rights were violated when he was allegedly profiled for being a Texas resident; Ground Ten alleges his conviction for possession of a large capacity ammunition magazine violates the Second Amendment; Ground Eleven alleges his conviction for possession of hollow-point bullets violates the Second Amendment; and Ground Twelve alleges his constitutional rights were violated by his trial by jury *in absentia*. (Pet. ECF No. 1 at 7-15.)

**APPELLATE DIVISION ERRED IN ITS APPLICATION OF THE PLAIN VIEW DOCTRINE.**

**POINT II**

**EVEN IF THE PLAIN VIEW DOCTRINE APPLIED IN THIS MATTER, THE OFFICER STILL VIOLATED THE PETITIONER'S FOURTH AMENDMENT RIGHTS WHEN HE ENTERED THE VEHICLE AND SEIZED PETITIONER'S PROPERTY WITHOUT A WARRANT, CONSENT, OR EXIGENCY, AND THE APPELLATE DIVISION DECISION IS IN CONFLICT WITH EXISTING CASE LAW ON THIS ISSUE.**

**POINT III**

**PETITIONER'S TRANSPORTATION OF HIS LAWFULLY OWNED FIREARMS FROM HIS PRIOR HOME IN MAINE TO HIS NEW HOME IN TEXAS WAS PROTECTED BY THE SECOND AMENDMENT.**

(Pet. for Certification, ECF No. 22-7 at 8-19.)

In response to the Order to Show Cause issued by this Court, Evan Feit Nappen, Esquire, entered an appearance on behalf of Petitioner on September 6, 2017, and informed the Court Petitioner has elected to withdraw these unexhausted claims and proceed on his exhausted claims. (*See* ECF Nos. 34, 35.)  Because Grounds Four, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve are unexhausted, and Petitioner has elected to withdraw these claims and proceed on his remaining claims, the Court will now deem these claims withdrawn and address the remaining claims.

### B.  Petitioner's Remaining Habeas Claims

#### i.  Petitioner's Conduct is Not Protected by the Second Amendment or The Firearm Owners' Protection Act, 18 U.S.C. § 926A (Ground One)

In Ground One of the Petition, Petitioner argues his convictions under New Jersey's "gun control scheme" violate the Second Amendment.  Petitioner raised this argument on direct appeal and in his Petition for Certification, and the Appellate Division rejected it as follows:

> In his final argument, defendant claims his convictions should be reversed because "New Jersey's gun control scheme" violates his right under the Second Amendment of the United States Constitution to keep and bear arms. We disagree. The Second Amendment does not create "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 2816, 171 L.Ed.2d 637, 678 (2008). Furthermore, the Second

11

> Amendment does not preclude the State from regulating the manner in which firearms and related accessories must be transported. *See e.g.*, *State v. Hatch*, 64 N.J. 179, 188–89, 313 A.2d 797 (1973) (applying New Jersey's statutory requirements to a Massachusetts resident driving through New Jersey on his way to Pennsylvania).

*State v. Reininger*, 65 A.3d 865, 878 (App. Div. 2013).

Petitioner's argument relies primarily on *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010). In *Heller*, the Supreme Court held that the District of Columbia's "ban on handgun possession in the home . . . [and] its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" violated the Second Amendment. *Heller*, 554 U.S. at 635. In so holding, the Court found the Second Amendment "conferred an individual right to keep and bear arms." *Id.* at 595. In *McDonald*, the Court held "the Second Amendment right is fully applicable to the States." 561 U.S. at 750. The holdings of *Heller* and *McDonald*, however, dealt exclusively with guns <u>in the home</u>. Petitioner appears to ask the Court to view his truck as an extension of his home and/or extend *Heller's* limited recognition of the right to keep and bear arms to the transportation of firearms; however, for state law prisoners seeking relief under § 2254, federal law is clearly established only where it is clearly expressed in <u>the holdings</u> of the opinions of the United States Supreme Court. *See Woods*, 135 S. Ct. at 1376. Here, the Appellate Division did not unreasonably apply *Heller* and *McDonald* by finding that these decisions do not extend to gun possession outside the home or the manner in which guns may be transported. As such, Petitioner is not entitled to habeas relief on his claim that his convictions under the New Jersey's gun control scheme violate the Second Amendment.

In Ground One of the instant Petition, Petitioner also argues his conduct was protected by The Firearm Owners' Protection Act ("FOPA"), 18 U.S.C. § 926A, and appears to contend the

trial court erred in denying his motion to dismiss the indictment. Petitioner raised his challenge

to the indictment on direct appeal, and the Appellate Division rejected it as follows:

> In his first point, defendant argues the trial court erred in denying his motion to dismiss the indictment. Defendant primarily claims the indictment is defective because the prosecutor failed to instruct the grand jury on 18 U.S.C.A. § 926A. The trial court rejected this argument and so do we.
>
> The purpose of the grand jury is to "determine whether the State has established a prima facie case that a crime has been committed and that the accused has committed it." *State v. Hogan*, 144 N.J. 216, 227, 676 A.2d 533 (1996). The grand jury "is an accusative rather than an adjudicative body," and requiring it "to weigh inculpatory and exculpatory evidence would alter the grand jury's historical role." *Id.* at 229–30, 676 A.2d 533. Accordingly, a prosecutor's duty to present exculpatory evidence "arises only if the evidence satisfies two requirements: it must directly negate guilt and must also be clearly exculpatory." *Id.* at 237, 676 A.2d 533. In this case, defendant's SUV did not have a trunk. Therefore, the exemption under the federal statute, 18 U.S.C.A. § 926A, only applied if defendant's firearms were stored "in a locked container other than the glove compartment or console" of his vehicle. In addition, the federal exemption did not apply because the firearms in the unlocked gun cases on the backseat of the SUV and the loaded handgun behind the driver's seat were "directly accessible" to defendant. Thus, the prosecutor did not improperly interfere with the grand jury's decision-making process by failing to explain the federal exemption available to interstate travelers, and the trial court's refusal to dismiss the indictment was not an abuse of discretion.

*Reininger*, 430 N.J. Super. at 531–32. Although Petitioner raised this issue on direct appeal, he

did not raise this issue in his Petition for Certification, and, therefore, this aspect of Ground One

appears to be unexhausted. The Court, however, is free to deny this claim on the merits pursuant

to 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728.

By way of background, FOPA allows gun owners licensed in one state to carry firearms

through another state under certain circumstances. *See Revell v. Port Auth. of New York, New

Jersey*, 598 F.3d 128, 130, 139 (3d Cir. 2010). The relevant statutory provision reads as follows:

> Notwithstanding any other provision of any law or any rule or regulation of a State or any political subdivision thereof, any person who is not otherwise prohibited by this chapter from transporting, shipping, or receiving a firearm shall be entitled to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry such firearm to any other place where he may lawfully possess and carry such firearm if, during such transportation the firearm is unloaded, and neither the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle: Provided, That in the case of a vehicle without a compartment separate from the driver's compartment the firearm or ammunition shall be contained in a locked container other than the glove compartment or console.

18 U.S.C. § 926A. By its plain language, FOMA allows an individual to transport a gun if it is unloaded and neither the gun nor ammunition is readily accessible from the passenger compartment. In the case of a vehicle without a compartment separate from the passenger's compartment, the gun must be in a locked container.

Petitioner contends the trial court erred in denying his motion to dismiss the indictment based on the § 926A defense. In a federal criminal case, "[a]n indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956); *see also United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007). "As a general matter, a district court may not dismiss a [federal] indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). "[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* at 256 (citation omitted).

Notably, the Fifth Amendment right to a grand jury presentation in felony cases is not applicable to the states. *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). Thus, any claim of

defect in a state grand jury proceeding is a claim of a state-law error that does not raise federal constitutional concerns unless it rises to the level of a due process deprivation. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). *Cf. U.S. v. Console*, 13 F.3d 641, 671–72 (3d Cir .1993) (with the exception of a claim of racial discrimination in the selection of grand jurors, a petit jury's guilty verdict renders harmless any prosecutorial misconduct before the indicting grand jury) (citing *Vasquez v. Hillery*, 474 U.S. 254 (1986)). Where any error in a state grand jury proceeding is rendered harmless by a subsequent petit jury verdict, there is no due process deprivation. *See, e.g., Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989); *United States v. Mechanik*, 475 U.S. 66, 72–73 (1986) (involving a violation of Fed.R.Crim.P. 6(d)); *see also Vandever v. Atty. Gen. for State of New Jersey*, No. 04-0877, 2006 WL 1541035, at *6 (D.N.J. June 2, 2006) (explaining same).

Here, the petit jury was presented with and instructed on the § 926A defense, *see Reininger*, 430 N.J. Super. at 529-31, and found Petitioner guilty of the crimes charged beyond a reasonable doubt, rendering harmless any potential error in the state grand jury proceedings. Thus, Petitioner is not entitled to relief on this claim.

### ii. Review of Petitioner's Fourth Amendment Claims (Grounds Two, Three & Five) is Precluded by *Stone v. Powell*, 428 U.S. 465, 494 (1976)

In Grounds Two, Three, and Five, Petitioner contends he was denied his rights under the Fourth Amendment when police searched his vehicle and seized his firearms, and that his statement following the illegal search and seizure should have been suppressed as fruit of the poisonous tree. The Supreme Court has held that violations of the Fourth Amendment do not provide grounds for federal habeas corpus relief from a state conviction if the petitioner has had a full and fair opportunity to litigate such claims at the state level. *See Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone v. Powell*, the Court announced the following rule:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

428 U.S. at 494 (footnotes omitted); *Gilmore v. Marks*, 799 F.2d 51, 54 (3d Cir. 1986). "While the federal courts are not thus deprived of jurisdiction to hear the claim, they are—for prudential reasons—restricted in their application of the exclusionary rule." *Marshall v. Hendricks*, 307 F.3d 36, 81 (3d Cir. 2002) (citing *Stone*, 428 U.S. at 494 n.37).

The Third Circuit has recognized limited instances in which a full and fair opportunity to litigate was denied to a habeas petitioner, such as cases "where a structural defect in the system itself prevented [the Petitioner's] claim from being heard." *Marshall*, 307 F.3d at 82 (citing *Boyd v. Mintz*, 631 F.2d 247, 250–51 (3d Cir. 1980); *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir.1986) (observing that a state's "failure to give at least colorable application of the correct Fourth Amendment constitutional standard" might amount to a denial of the opportunity for full and fair litigation)). As explained by the Third Circuit in *Marshall*, "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar." *Id.* (citation omitted). Likewise, allegations "that the Fourth Amendment claims were decided incorrectly or incompletely by the New Jersey courts" are "insufficient to surmount the *Stone* bar." *Id.* By "summar[il]y" or even "erroneous[ly]" addressing a petitioner's Fourth Amendment suppression claim, state courts bar federal review. *Marshall*, 307 F.3d at 82.

Here, there is no question the trial court and the Appellate Division heard and rejected Petitioner's Fourth Amendment claims. (*See* Hearing Transcripts dated 2/17/10, 2/18/10, 3/8/10 (ECF Nos. 22-14, 22-15, 22-16)); *see also Reininger*, 430 N.J. Super. 533-38. Because the state courts heard and considered Petitioner's Fourth Amendment claims, Petitioner was afforded a full and fair opportunity to litigate them. Accordingly, federal habeas corpus review of Petitioner's

Fourth Amendment claims is precluded by *Stone v. Powell*, and habeas relief is denied on Grounds Two, Three, and Five.

### C. Certificate of Appealability

Petitioner has not made a substantial showing of the denial of a constitutional right; as such, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV. CONCLUSION

For the reasons stated above, the Court deems Grounds Four, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve of the Petition to be withdrawn; the remaining claims are **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order will follow.

**Date:** July 30, 2018

*/s/ Brian R. Martinotti* 
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**